# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

AMERICAN DESIGN & BUILD, INC.

       Plaintiff,

       v.                                  Case No. 11-C-293

HOUSTON CASUALTY COMPANY,

       Defendant.

---

## DECISION AND ORDER

---

On March 23, 2011, the plaintiff, American Design & Build, Inc. (American Design), filed a complaint asserting breach of contract and insurance bad faith claims against the defendant, Houston Casualty Company (Houston Casualty). Specifically, the plaintiff asserts that the defendant breached its duty to defend the plaintiff and denied insurance benefits in bad faith.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.00 Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 3(a)(1) (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

On August 15, 2011, both parties filed motions for summary judgment. (Docket ## 20, 22). The plaintiff moves for partial summary judgment on its claim that the defendant breached its duty to defend. The defendant moves for summary judgment

1

on the ground that its insurance policy does not cover the claims against the plaintiff because the plaintiff made material misrepresentations on its application for insurance when it did not disclose that there was a pending controversy with a client.

On September 15, 2011, the defendant filed a motion to strike the supplemental affidavit of Attorney Patrick Madden. (Docket #56). These motions are fully briefed and will be addressed herein.

## MOTION TO STRIKE

Because the motion to strike addresses evidence submitted in support of the plaintiff's motion for partial summary judgment, the court will address this motion first. In moving to strike the supplemental affidavit of Attorney Madden or in the alternative, for leave to file a sur-reply, the defendant asserts that Attorney Madden's supplemental affidavit is improper because it violates Wisconsin Supreme Court Rule (SCR) 20:4.2. The defendant contends that Attorney Madden is swearing to a statement made by Mr. Wiley during a conversation that took place when Mr. Wiley was represented by other counsel. The defendant also maintains that the plaintiff may not raise an argument for the first time in its reply brief. Should the court deny the motion to strike, the defendant requests leave to file a sur-reply so that it may address the issues raised in the supplemental affidavit.

In response, the plaintiff states that the supplemental affidavit does not violate SCR 20:4.2 because Mr. Wiley was not represented by counsel. The plaintiff further contends that, because the attorneys who represented Mr. Wiley and the defendant were not licensed to practice in Wisconsin, Mr. Wiley and the defendant were not "represented" under Wisconsin law. The plaintiff also states that the law firm retained

2

by the defendant at that time was acting solely in the capacity of a claims administrator, not as counsel.  In addition, the plaintiff maintains that Attorney Madden's conversation with Mr. Wiley does not violation SCR 20:4.2 because the parties were not adverse at the time of the conversation.

Rule 20:4.2 of the Wisconsin Supreme Court Rules prohibits a lawyer from communicating "about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter . . .."  Although the parties disagree about the applicability of this rule to Attorney Madden's supplemental affidavit, the court need not determine that issue because it will not consider the supplemental affidavit on other grounds.

A party waives an argument that was not raised in its initial brief.  See Carter v. Tennant, 383 F.3d 673, 679 (7th Cir. 2004).  Thus, the plaintiff may not introduce new arguments in its reply brief.  Id.  Accordingly, the court will not consider any argument raised for the first time in the plaintiff's reply brief.  Moreover, on a motion for summary judgment, the court considers only those facts that are undisputed.  See Fed. R. Civ. P 56(c).  The parties dispute whether Mr. Wiley made the statement included in Attorney Madden's affidavit and, therefore, the court will not consider that statement in deciding the summary judgment motion regardless of whether it was a new argument raised in a reply brief or whether Attorney Madden violated SCR 20:4.2.  Therefore, the court will deny the defendant's motion to strike.

## **SUMMARY JUDGMENT**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show

3

that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u>, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>McNeal v. Mach.</u>, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991).  "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit."  <u>See Anderson</u>, 477 U.S. at 248.  A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>  A genuine issue of material fact is not shown by "the mere existence of some alleged factual dispute between the parties," <u>Anderson</u>, 477 U.S. at 247 (1986), or by "some metaphysical doubt as to the material facts,"  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  <u>Anderson</u>, 477 U.S. at 252.  In determining whether a genuine issue of material fact exists, the court must consider the evidence and all reasonable inferences in the light most favorable to the nonmoving party.  <u>See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., Ltd.</u>, 475 U.S. 574, 587 (1986); <u>Matter of Wade</u>, 969 F.2d 241, 245 (7th Cir. 1992).

At the outset, the court notes that a number of the parties' stipulated facts are problematic.  For instance, Stipulated Fact 12 states: "Following the February 11, 2010 meeting, Sadownikow sent Buending a memorandum dated the same day."  The parties cite to Stipulated Exh. 2.  Stipulated Exh. 2 is a three-page memorandum relating to the building specifications and costs as a "Follow-up from 2-11-10 Meeting."  Stipulated Fact 26 states:  "On September 13, 2010, Tim Mullins of RA&MCO and Jamie McLean of R-T

4

Specialty corresponded via email." The parties cite to Stipulated Exh. 47 in support of this fact. Stipulated Exh. 47 consists of a chain of eight emails. The emails span several days and include additional people beyond those named in Stipulated Fact 26. Likewise, Stipulated Fact 27 states: "On September 13, 2010, Tim Mullins of RA&MCO sent an email to R-T Specialty." This fact, as written, appears duplicative of Stipulated Fact 26, except that the parties cite to Stipulated Exh. 30. Stipulated Exh. 30 is a continuation of the chain of eight emails in Stipulated Exh. 47. It contains only one new email.

Factual statements like those in Stipulated Facts 12, 26, and 27 are not, in and of themselves, material to the resolution of this dispute. Rather, it appears that the parties intend for the court to ascertain the facts from the stipulated exhibits. However, without more specific stipulated or proposed facts, the court is unable to discern what the parties actually intend to establish with these exhibits. This is especially true when the stipulated exhibits are several pages long and address a number of topics.

Moreover, while the parties do not dispute that an email was sent on a certain date, they do dispute the meaning of some of the language in the email. For example, the parties agree that Tim Mullins sent an email to Jamie McLean on September 13, 2010. See Stipulated Fact 27. In support of Stipulated Fact 27, the parties cite Stipulated Exh. 30, which includes an email stating, "Let's bind it." In its brief, the plaintiff asserts that this email constitutes a binder. The defendant disagrees. The court cannot engage in its own fact finding mission on a motion for summary judgment. Rather, the burden is on the parties themselves to set forth the undisputed facts. Merely citing to an exhibit, without more, does not suffice.

5

Thus, some of the Stipulated Facts and Exhibits contain disputes of fact which the court cannot resolve on summary judgment. Therefore, if the stipulated facts, without reference to the supporting exhibits, are not themselves relevant or material to this decision, the court did not include them in the relevant undisputed facts and did not consider them for purposes of determining the motions for summary judgment.

### RELEVANT UNDISPUTED FACTS[1]

Plaintiff American Design is engaged in the business of providing architectural and contracting services with its principal place of business is West Bend, Wisconsin. Kraig Sadownikow is the president and an owner of the plaintiff.

The defendant is an insurance company in the business of providing specialty lines of insurance and is a subsidiary of HCC Insurance Holdings, Inc. The defendant's principal place of business is Houston, Texas. Risk Adjustment & Management Company (RA&MCO) processes insurance applications and claims on behalf of the defendant. RA&MCO also is a subsidiary of HCC Insurance Holdings, Inc.

R&R Insurance Services, Inc. (R&R Insurance) is an independent insurance agency with its corporate headquarters and principal place of business in Waukesha, Wisconsin. R&R Insurance also has an office in West Bend, Wisconsin. R&R Insurance does business with multiple insurance companies and wholesale insurance brokers. The plaintiff is R&R Insurance's client. R&R Insurance sold the plaintiff its general liability policy, workers' compensation insurance, property, auto, and inland marine insurance and its umbrella policy. R&R Insurance also provides services such as claims service or assistance and loss control to the plaintiff. Typically, as in this case, R&R Insurance's

---

[1] As a general matter, unless accompanied by citation, the relevant facts are taken from the stipulated facts and the parties' proposed findings of fact which are not disputed. Citations to sources of quoted excerpts have been included even when those excerpts are undisputed.

customer does not communicate with the wholesale broker. R&R Insurance only communicated with the insurance carriers on behalf of the defendant through R-T Specialty, LLC.

Jamie Vanderveldt is the person at R&R Insurance that leads a team tasked with marketing and placing the plaintiff's insurance. Mr. Vanderveldt testified that he is not a representative of the defendant. He also testified that he does not have authority to bind the defendant, he does not have authority to sell any of the defendant's products directly, that R&R Insurance is not an insurance company, and that it is not sufficient to report a claim to the defendant by reporting it to R&R Insurance. Mr. Vanderveldt testified that a three sentence email is not a typical binder; a binder is a formal document.

R-T Specialty, LLC, also known as Ryan Turner Specialty (R-T Specialty), is an independent wholesale specialty insurance broker with its corporate headquarters and principal place of business in Chicago, Illinois. R-T Specialty is not an agent or subsidiary of RA&MCO. The only authority R-T Specialty has to act on behalf of the defendant is set forth in the Insurance Broker Agreement between the parties. The Insurance Broker Agreement specifically states, "Producer has full power and authority to receive, **BUT MAY NOT ACCEPT OR BIND WITHOUT PRIOR AUTHORIZATION FROM THE COMPANY**." (Declaration of Timothy Mullins [Mullins Decl.], Exh. B at 1) (emphasis in original).

Cherokee's Promise, LLC (Cherokee's Promise) is a former customer of the plaintiff. Shannon Buending is the Managing Member of Cherokee's Promise. Cherokee's Promise entered into a contract with the plaintiff on November 2, 2009, for the design and construction of an animal health clinic (the clinic). The original contract price

7

was $2,348,528.72. The original contract included approximately $20,000 for design services. During the course of the project, Mr. Sadownikow met with Ms. Buending on regular occasions. Two such meetings took place on February 11, 2010, and August 18, 2010. In early August, the plaintiff delivered to Ms. Buending an invoice dated August 2, 2010 (the August Draw). The plaintiff expected payment on the August Draw within 30 days.

For at least the last five years, the plaintiff has continuously maintained a policy of professional liability insurance providing coverage for alleged defects in the design services of its architects. Prior to September 12, 2010, the plaintiff carried a professional liability policy with Evanston Insurance Company. This policy expired on September 12, 2010. As the September 12, 2010, renewal date approached, the plaintiff obtained competing quotes to obtain a better price. In Wisconsin, there is not an established market for design professional liability insurance. As such, policies covering this risk are issued as surplus lines insurance as authorized by Wis. Stat. § 618.41.

On August 5, 2010, Kathleen Zehetner, plaintiff's office manager, signed an application for professional liability insurance on the form used by Evanston Insurance Company. R&R Insurance sent the application to R-T Specialty, which in turn sent the application to various companies to obtain quotes.

On September 1, 2010, RA&MCO received from R-T Specialty a request for an insurance quote for the plaintiff. Included with that request was the August 5, 2010, application signed by Ms. Zehetner. On September 9, 2010, Tim Mullins, an underwriter at RA&MCO, provided a quote to R-T Specialty for the plaintiff.

8

On August 23 and 24, 2010, Cherokee's Promise reported to the plaintiff that it had found mold throughout the lower level of the building. Ms. Buending sent Mr. Sadownikow an email on August 25, 2010, demanding that the mold be removed by August 27, 2010. Ms. Buending stated in this email that "[i]f what I requested to be done by August 27 is not completed on that date, I will take steps in doing this myself and will bill [the plaintiff] the cost." (Stip. Exh. 12). Mr. Sadownikow's September 2, 2010, memorandum acknowledged that he perceived Ms. Buending's email as "threaten[ing] recourse" related to the mold. Id. This memorandum disclaimed responsibility for the mold and stated, "the presence of mold was not caused by AD&B nor anyone working for us. Rather, it is due to the timing of construction decisions." Id. Mr. Sadownikow testified that it was possible that water infiltrated into the lower level because the building was not properly enclosed.

The plaintiff and Cherokee's Promise also disputed whether the clinic was intended to be modeled after the Fox Valley Animal Referral Center. On September 2, 2010, Cherokee's Promise sent a letter to the plaintiff requesting an audit of the plaintiff's files and records on the clinic project. This letter stated that "no progress payment will be made until an audit is completed." (Stip. Exh. 14). Also on September 2, 2010, Mr. Sadownikow emailed Ms. Buending a memorandum stating that payment on the August Draw was due on September 1, 2010. On September 7, 2010, the plaintiff's attorney sent Cherokee's Promise's attorney a letter that stated that Cherokee's Promise had no justification to withhold payment of the August Draw. This letter provided written notice pursuant to § A.9.7 of the contract that all work on the project would cease in seven days unless the invoice was paid in full. The plaintiff also demanded that Cherokee's Promise

9

provide the plaintiff with adequate assurance of payment for the remainder of the project within 10 days of September 7, 2010.

Mr. Sadownikow testified that a payment dispute sometimes foreshadows a dispute over performance under the contract. Mr. Sadownikow testified that at the time he signed the RA&MCO Construction Industry Application (the RA&MCO Application) on September 20, 2010, Cherokee's Promise was past due in making its August Draw payment and owed the plaintiff approximately $250,000.00.

On September 14, 2010, Cherokee's Promise sent two letters to the plaintiff. One letter (the Claim Letter) alleged several design defects, demanded financial compensation for the defects, and provided notice to the plaintiff that Cherokee's Promise had elected to terminate the clinic contract for cause pursuant to the terms of the contract. The other letter (the Construction Defect Letter) provided the plaintiff seven days written notice of alleged construction defects pursuant to the terms of the clinic contract. Mr. Sadownikow admitted that the Construction Defect Letter primarily alleged design defects as opposed to construction defects. The plaintiff had actual knowledge of Cherokee's Promise's design defect claims as of September 14, 2010.

Mr. Sadownikow testified that the plaintiff's staff filled out the RA&MCO Application prior to September 20, 2010, to the best of their knowledge at that time. On September 20, 2010, Mr. Sadownikow signed the RA&MCO Application. The RA&MCO Application was simply put in front of him and he signed it. Mr. Sadownikow testified that as of the date he signed the RA&MCO Application, there was in fact a claim for design defects, there was a dispute concerning the payment of fees with Cherokee's Promise, and there was a dispute including an unexcused delay, a budget overrun, or a change order which

10

exceeded $10,000. Mr. Sadownikow had full knowledge of these claims at the time he signed the RA&MCO Application. The plaintiff's answers to Questions 29, 30, and 37 of the RA&MCO Application were incomplete. Mr. Sadownikow said in hindsight that the RA&MCO Application was incomplete and agreed the disputes should have been disclosed. He also stated that he was aware that the defendant was going to rely on what was in the RA&MCO Application and that the purpose of the RA&MCO Application is to enable the underwriter to decide whether or not to authorize the binding of insurance. Mr. Sadownikow said that the insurance carrier needed to know what kind of a risk the plaintiff was.

That same day, the plaintiff sent an email to R&R Insurance regarding a potential problem with a customer. Mr. Vanderveldt of R&R Insurance and Ms. Zehetner of the plaintiff had a phone call later that day.

Also on September 22, 2010, the plaintiff submitted the signed RA&MCO Application to R&R Insurance via electronic mail. That same day, R&R Insurance sent the application to R-T Specialty, who then sent the application to RA&MCO. Nobody at R&R Insurance took responsibility for verifying that the plaintiff's application was correct. R&R Insurance was aware of and discussed that the Cherokee's Promise claims could be a basis for the defendant to rescind the policy or deny coverage. R&R Insurance was hopeful that there was coverage for the claim. Neither the plaintiff nor R&R Insurance ever supplemented or corrected the RA&MCO Application.

RA&MCO issued policy number HCC 10-60496 (the Policy) on September 22, 2010, but only after it received the plaintiff's signed RA&MCO Application. RA&MCO did not have a copy of the Construction Defect Letter when it issued the binder or the Policy.

11

Past and present claims of any amount are considered for underwriting purposes. The plaintiff paid all premiums due under the Policy.

Also on September 22, 2010, the plaintiff sent the Claim Letter to R&R Insurance by electronic mail. The plaintiff did not directly send either the Claim Letter or the Construction Defect Letter to RA&MCO or to the defendant. The Claim Letter was forwarded by R&R Insurance to R-T Specialty on September 22, 2010. The Claim Letter was forwarded by R-T Specialty to RA&MCO on September 28, 2010. RA&MCO opened a claims file on that day.

The defendant sent a letter acknowledging the Cherokee's Promise claim against the plaintiff. The letter specifically provided: "This claim is being handled by Houston Casualty Company pursuant to a reservation of all of its rights, privileges and defenses under the policy and available at law and in equity." (Declaration of Eric Cheng [Cheng Decl.], Exh. A at 1). The defendant conducted an active investigation of the claim. On multiple occasions, it requested and received relevant information and documents from the plaintiff.

The plaintiff was represented by counsel throughout both the claims process and the underlying claims. The defendant specifically requested that the plaintiff keep the defendant "apprized of any development in the underlying case." (Cheng Decl., Exh. B).

In a letter dated November 10, 2010, the defendant identified the September 14, 2010, design defect claim letter from Cherokee's Promise, the allegation of mold, and the payment dispute as being items that were not disclosed in the RA&MCO Application and thus "coverage is not afforded." (Cheng Decl., Exh. C. at 3). This letter specifically reserved the defendant's rights under Policy Exclusion 10 regarding any "circumstance"

12

that could reasonably be expected to give rise to an insurance claim. Id. The letter then stated:

> [The defendant] expressly reserves the right to assert any defense or reservations of rights determined to exist, to have a court determine whether there is (or ever was) any coverage for this matter, and to seek reimbursement of all sums it incurs with respect to this matter including for any defense or indemnity.

Id. at 8. The letter made no reference to the defense of the Cherokee's Promise claim.

The defendant sent another letter dated January 10, 2011. This letter again asserted the defendant's position that there was no coverage based on the omission in the plaintiff's RA&MCO application. This letter also reserved the defendant's right to seek a court determination as to coverage and reimbursement of defense costs. (Stip. Exh. 49).

The defendant referred the plaintiff's insurance claim to Wisconsin counsel on March 3, 2011. The defendant, through its Wisconsin counsel, contacted the plaintiff's counsel by telephone on March 17, 2011 and March 21, 2011. The defendant's Wisconsin counsel left a voicemail with the plaintiff's counsel on March 17, 2011, to the effect that the defendant had retained Wisconsin counsel, would be appointing panel counsel to defend the plaintiff, and would reimburse the plaintiff for its defense costs.

The defendant formally accepted the plaintiff's tender of defense in writing on March 23, 2011, retroactive to the date it received notice of Cherokee's Promise. By letter dated April 20, 2011, the Madden Law Firm submitted its invoices for legal services to the defendant for payment. On May 19, 2011, the defendant sent the plaintiff's counsel a reimbursement check for the defense costs set forth in the April 20 letter. The

13

defendant's cover letter provided that it was reimbursing defense costs incurred retroactive to September 28, 2010, less the policy deductible.  The defendant's letter also requested that future invoices be forwarded to counsel for payment.

The plaintiff filed a demand for mediation on October 18, 2010, before the American Arbitration Association to address the Cherokee's Promise claim.  The dispute between the plaintiff and Cherokee's Promise was pending as a mediation/arbitration at the time these motions for summary judgment were filed.  The Madden Law Firm still represents the plaintiff.

## ANALYSIS

As an initial matter, because this is a diversity action which involves connections to both Wisconsin and Texas, the court must determine which state's laws apply to the parties' summary judgment motions.  Although the parties did not specifically address the choice-of-law issue in their briefs, they appear to agree that Wisconsin law applies to this case.  Accordingly, the court also will apply Wisconsin law.

The construction of an insurance policy is amenable to summary judgment because it presents a question of law.  Rhein Bldg. Co. v. Gehrt, 21 F.Supp. 2d 896, 899 (E.D. Wis. 1998); Heil Co. v.  Hartford Acc. and Indem. Co., 937 F.Supp. 1355 (E.D. Wis 1996) (other citations omitted).  Both the interpretation of words or clauses in an insurance policy and the determination of whether coverage exists under that policy are questions of law for the court.  Doyle v. Engelke, 219 Wis. 2d 277, 284, 580 N.W.2d 245, 248 (Wis. 1998) (citing Just v. Land Reclamation, Ltd., 155 Wis.2d 737, 744, 456 N.W.2d 570 [Wis. 1990]; Smith v. Atlantic Mut. Ins. Co., 155 Wis.2d 808, 810, 456 N.W.2d 597 [Wis. 1990]).  The Wisconsin Supreme Court has stated that "in determining an insurer's

14

duty to defend, we apply the factual allegations present in the complaint to the terms of the disputed insurance policy." Doyle, 580 N.W.2d at 248. The court liberally construes those allegations and assumes all reasonable inferences. Id.

An insurer has a duty to defend a suit where the complaint alleges facts which, if proven at trial, would give rise to the insurer's liability under the terms of the policy. Id. Where an insurer's policy provides coverage for even one claim made in a lawsuit, that insurer is obligated to defend the entire suit. Id. at n.4. The duty to defend is broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage. See Newhouse by Skow v. Citizens Sec. Mut. Ins. Co., 176 Wis. 2d 824, 834-35, 501 N.W.2d 1, 5 (Wis. 1993).

An insurer's obligation to defend the insured in a third-party suit is established by determining whether the allegations in a complaint, if proven, would give rise to the possibility of recovery under the terms and conditions of the insurance policy. School Dist. of Shorewood v. Wausau Ins. Companies, 170 Wis.2d 347, 364, 488 N.W.2d 82, 87 (Wis. 1992). The nature of the claim alleged against the insured is controlling. Id. Generally, any doubts regarding the duty to defend and any ambiguities contained in the insurance contract must be resolved in favor of the insured. Id. However, "[t]he insurer is under an obligation to defend only if it could be held bound to indemnify the insured." Nichols v. American Employers Ins. Co., 140 Wis.2d 743, 747, 412 N.W.2d 547, 549 (Wis. Ct. App. 1987) (quoting Grieb v. Citizens Casualty Co., 33 Wis.2d 552, 558, 148 N.W.2d 103, 106 [Wis. 1967]).

15

As noted in <u>School Dist. of Shorewood</u>, 488 N.W.2d at 88-89, the standards for construction of terms of insurance are well established. They are summarized succinctly as follows:

> Contracts of insurance are controlled by the same principles of law that are applicable to other contracts. A policy of insurance like any other contract is to be construed so as to give effect to the intention of the parties. In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean. Whatever ambiguity exists in a contract of insurance is resolved in favor of the insured. . . . Words or phrases in a contract are ambiguous when they are reasonably or fairly susceptible to more than one construction. <u>Caporali v. Washington Nat. Ins. Co</u>., 102 Wis.2d 669, 675-76, 307 N.W.2d 218 (1981) (quoting <u>Garriguenc v. Love</u>, 67 Wis.2d 130, 134-35, 226 N.W.2d 414 (1975)). However, when the terms of the policy are unambiguous and plain on their face, the policy should not be rewritten to include insurance coverage not agreed to by the parties and for which it was not paid. <u>Mercado v. Mitchell</u>, 83 Wis.2d 17, 25, 264 N.W.2d 532 (1978).

When coverage is disputed, insurers have several options with respect to their duty to defend. The insurer may seek bifurcation of the issues of coverage and liability. <u>Prosser v. Leuck</u>, 225 Wis. 2d 126, 148, 592 N.W.2d 178, 187 (Wis. 1999). Other solutions include a reservation of rights by the insurer or a nonwaiver agreement to be signed by the insured, whereby the insurer agrees to defend while the insured acknowledges the insurer's right to contest coverage. <u>Grube v. Daun</u>, 173 Wis. 2d 30, 75, 496 N.W.2d 106 (Wis. Ct. App. 1992). Moreover, in cases where the insurer is not named in the underlying suit, coverage may be determined by a separate declaratory judgment action, as well as a bifurcated trial. <u>Fire Ins. Exchange v. Basten</u>, 202 Wis. 2d 74, 77, 549 N.W.2d 690 (Wis. 1996).

16

**Plaintiff's Motion for Partial Summary Judgment**

In moving for partial summary judgment, the plaintiff asserts that the defendant breached its duty to defend the plaintiff against the claim by Cherokee's Promise. The plaintiff contends that the defendant's letters dated November 10, 2010, and January 10, 2011, stated that there was no coverage for the Cherokee's Promise claim under the Policy. According to the plaintiff, the word "coverage" encompasses both the duty to defend and the duty to indemnify. Therefore, the plaintiff maintains that these letters constitute a refusal to defend the claim. The plaintiff also asserts that when the defendant did agree to pay for the defense of the suit, it was too late because the duty to defend had already been breached.

The defendant disagrees, stating that the stipulated facts and exhibits establish that while the defendant did not believe there was coverage for the Cherokee's Promise claim, the defendant did not refuse to defend the case. Rather, the defendant asserts that it reserved its rights to deny coverage, but did not deny a defense. In support, the defendant cites to language in its November, 2010, and January, 2011, letters indicating that it reserves its rights to seek reimbursement of the defense costs associated with the claim. In addition, the defendant cites to its March, 2011, letter formally accepting the tender of defense and requesting invoices so that it may reimburse the plaintiff for the cost of the defense, as well as the May 19, 2011, reimbursement check the defendant sent to plaintiff's counsel.

The plaintiff's contention that the defendant's November, 2010, and January, 2011, letters refused to defend the plaintiff against the Cherokee's Promise claim is unpersuasive. While the letters clearly set forth the defendant's position that there is no

coverage for the Cherokee's Promise claim, a review of the facts shows that each letter ends by setting forth a reservation of rights, exactly as required by Wisconsin law. See Grube, 173 Wis. 2d at 75. The plaintiff is incorrect that an insurer's statement that coverage is not afforded for a particular claim necessarily means that the insurer also is refusing to defend its insured against that claim. See Radke v. Fireman's Fund Ins. Co., 217 Wis. 2d 39, 577 N.W.2d 366 (Ct. App. 1998). In Radke, the insured was sued for civil rights violations, intentional infliction of emotional distress, negligent infliction of emotional distress, and assault and battery. He tendered the defense to his homeowner's insurance company which "denied coverage *and* refused to defend him." Id. at 41. The insured then brought suit against the insurance company seeking a declaration regarding coverage and the duty to defend. The court found that the insurance company had breached its duty to defend. The court stated that the case "might not have been necessary if [the insurance company] had sought earlier judicial resolution of coverage as outlined in the Grube line of cases." Id. at 44. The court then set forth the acceptable means by which an insurance company may raise the coverage issue without breaching its duty to defend, one of which is to reserve its rights by paying for the defense. Id. at 44-45. In order to violate the duty to defend, then, an insurance company must both deny coverage for the claim and refuse to defend the case. The defendant cites no case law holding that an insurer may not agree to defend the case while simultaneously stating its position that the claim is not covered and reserving its right to raise the coverage issue. Here, the letters setting forth the defendant's position that coverage is not afforded also include a reservation of rights making it clear that the defendant intends to defend the case.

18

Moreover, the undisputed facts establish that the plaintiff actually has received money from the defendant to reimburse the plaintiff for the cost of the defense, retroactive to the date the defendant received notice of the claim.  In light of this, the court is perplexed by the plaintiff's insistence that the defendant has breached its duty to defend. The plaintiff asserts that the money it received from the defendant is not adequate to reimburse the plaintiff for its defense.  However, the facts show that the defendant's May, 2011, letter requested that future invoices be forwarded to the defendant's counsel for payment.  If there are additional defense costs for which the plaintiff has yet to be reimbursed, the plaintiff need only send those invoices to the defendant's counsel.  The plaintiff also states that it declined the defendant's acceptance of the tender of defense. But the plaintiff cannot refuse to accept the defense and then sue the defendant for a failure to defend.

The plaintiff's assertion that the defendant's acceptance of the defense was "too little, too late," also is unpersuasive.  (Plaintiff's Reply Memorandum in Support of Its Motion for Partial Summary Judgment, at 1).  An insurer may investigate a claim before accepting the defense, so long as it reimburses the insured for the defense retroactive to the date of the claim.  Lakeside Foods, Inc. v. Liberty Mutual Fire Insurance Co., 329 Wis.2d 270, 789 N.W.2d 754 (insurer did not breach its duty to defend by conducting an investigation for nearly three months before accepting the tender of defense and appointing panel counsel).  Here, the facts show that the defendant conducted an active investigation of the claim, requesting and receiving documents from the plaintiff.  When the defendant accepted the plaintiff's tender of defense, the defendant notified the plaintiff that it would be reimbursed retroactive to the date the defendant received notice of the

19

claim. Thus, the court finds that even though the defendant investigated the claim for some time, this did not constitute a breach of its duty to defend.

The court finds that the defendant did not breach its duty to defend. Accordingly, the plaintiff's motion for partial summary judgment will be denied.

## The Defendant's Motion for Summary Judgment

In moving for summary judgment, the defendant asserts that the Policy does not provide coverage for the Cherokee's Promise claim against the plaintiff. The defendant contends that the plaintiff made two misrepresentations on its RA&MCO Application because it did not disclose the pending design defect and payment disputes with Cherokee's Promise. The defendant maintains that the known loss doctrine, the terms of the Policy itself, and Wis. Stat. § 631.11 preclude coverage under these circumstances. Because there is no coverage under the Policy, the defendant states that it is entitled to judgment in its favor on the plaintiff's insurance bad faith claims.[2]

The plaintiff asserts that the defendant's summary judgment motion must be denied on all counts. The plaintiff contends that there is coverage under the Policy. Specifically, the plaintiff states that the known loss doctrine does not apply because the defendant had already agreed to a temporary insurance contract based on the August 5, 2010, application which was filled out before the plaintiff had any knowledge of Cherokee's Promise's claims. The plaintiff also asserts that summary judgment under Policy Exclusion 10 is inappropriate because most facts necessary to this determination are in dispute. The plaintiff maintains that Wis. Stat. § 631.11 does not apply because the

---

[2] The defendant also submits that because there is no coverage, it is entitled to summary judgment on the plaintiff's claims that the defendant breached its duty to defend. The court already has determined that the defendant did not breach its duty to defend, whether there is coverage under the Policy or not, in addressing the plaintiff's motion for partial summary judgment. Therefore, the court will not address the defendant's duty to defend assertions in this motion for summary judgment.

defendant did not follow the statute. The plaintiff also contends that the statute does not apply because its misrepresentations on the RA&MCO Application are not material because coverage was already bound.

The main issue with respect to the coverage determination centers around what is referred to as an insurance binder, which is a form of temporary insurance. The court explained an insurance binder in <u>Terry v. Mongin Ins. Agency</u>, 105 Wis.2d 575, 580-81, 314 N.W.2d 349, 352 (1982):

> A binder is a contract of insurance in contemplation of a subsequent and more formal agreement; a binder is a contract for temporary insurance. A binder, although informal and sketchy in comparison to a policy, is issued prior to the issuance of a policy to afford insurance coverage during the interim between the application for and the issuance of the policy. A binder generally continues until a policy is issued, the risk is declined, or the time period agreed upon ends. A binder, even in the absence of express language, is construed as incorporating the terms and conditions of the standard policy used by the insurer or of a particular insurance policy specified by the parties.

Here, the parties dispute material facts regarding the binder. The plaintiff asserts that coverage was bound under the Policy no later than September 13, 2010, before the plaintiff received the Claim and Construction Defect Letters from Cherokee's Promise or otherwise had knowledge of any claim by or dispute with Cherokee's Promise. In support, the plaintiff cites a September 13, 2010, email exchange in which R&R Insurance stated that they "have an order to bind" and RA&MCO responded with a three-sentence email which included the sentence, "Let's bind it." (Stipulated Exhs. 30 & 47).

In contrast, the defendant asserts that the binder was not issued until September 22, 2010, after the defendant received the RA&MCO Application which failed to disclose the pending disputes with Cherokee's Promise. According to the defendant, the

21

September 13, 2010, email does not constitute a binder because a binder is a formal document. Each party cites to deposition testimony, exhibits, and declarations in support of its position.

The parties also dispute when the plaintiff had knowledge of a claim by Cherokee's Promise. The defendant asserts that the plaintiff had knowledge of the dispute well before September 14, 2010. In support, the defendant notes that as of September 2, 2010, Cherokee's Promise was late paying the August Draw and the plaintiff knew in mid-August that Cherokee's Promise disagreed with the plaintiff regarding certain design elements of the Clinic Project. Also on September 2, 2010, the plaintiff knew that Cherokee's Promise had retained counsel because the plaintiff received a letter from that counsel requesting an audit of the files for the clinic project. In addition, on September 7, 2010, plaintiff's counsel sent a letter to Cherokee's Promise in which it threatened to stop work on the Clinic Project. Therefore, the defendant contends that the plaintiff knew of a dispute that had the possibility of becoming a claim much earlier than September 14, 2010.

Disagreeing with the defendant, the plaintiff states that Cherokee's Promise had a contractual right to an audit and the fact that they exercised that right does not mean that Cherokee's Promise would bring a claim against the plaintiff. The plaintiff also contends that it is very common in large construction projects for the parties to make changes to the design as the project progresses, so the fact that Cherokee's Promise requested design changes also does not indicate that a claim was likely. The defendant states that Cherokee's Promise always had retained an attorney on this project, so it was not surprising to receive a letter from counsel for Cherokee's Promise regarding the

22

requested audit. In addition, Cherokee's Promise notes that, in light of the economic recession, it was not uncommon for clients to be late paying invoices.

These two factual disputes are material to the question of whether the Policy covers the Cherokee's Promise claim. If, in fact, the binder was issued via the September 13, 2010, email and if the plaintiff did not have any knowledge of a potential or actual claim by Cherokee's Promise until September 14, 2010, there may be coverage under the Policy for the claim. However, if the defendant can establish that the plaintiff had sufficient knowledge of a potential or actual claim prior to September 14, 2010, and/or that the binder did not issue until the defendant received the completed RA&MCO Application on September 22, 2010, then there is no coverage under the Policy for the Cherokee's Promise claim. The court cannot determine the coverage issue until these factual disputes are resolved. Therefore, the issue of coverage is inappropriate for resolution on summary judgment. Accordingly, the defendant's motion for summary judgment will be denied.

In sum, the court did not consider the contested portions of the supplemental affidavit of Attorney Madden because the facts were disputed. Therefore, the defendant's motion to strike will be denied. The court finds that the defendant reserved its rights under the policy, but did not refuse to defend the plaintiff against the Cherokee's Promise claim. Therefore, the defendant did not breach its duty to defend and the plaintiff's motion for partial summary judgment on this claim will be denied. However, there are disputes of material fact with respect to the issue of coverage. Therefore, the defendant's motion for summary judgment will be denied. The parties shall appear for a telephone status

conference on March 20, 2012, to address the schedule for proceeding on the remaining claims in the case.

## CONCLUSION

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion to strike be and hereby is **denied**.  (Docket # 56).

**IT IS ALSO ORDERED** that the plaintiff's motion for partial summary judgment be and hereby is **denied**.  (Docket # 20).

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment be and hereby is **denied**.  (Docket # 22).

**IT IS FURTHER ORDERED** that the parties shall appear by telephone for a status conference on **Tuesday, March 20, 2012, at 3:00 p.m.**  The court will initiate the call.

Dated at Milwaukee, Wisconsin this 5th day of March, 2012.


BY THE COURT:


s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge

24